UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ALLEN WOODARD              :        CASE NO. 2:21-CV-0059

VERSUS                     :

EDDIE CAROL, ET AL.        :        MAGISTRATE JUDGE KAY

<u>**MEMORANDUM RULING**</u>

Before the court is a Motion for Summary Judgment filed by defendants Eddie Curol (named as Eddie Carol), Tony Mancuso, and Deputy Hall (named as Deputy Hill) (collectively, "defendants"), which seeks dismissal of all claims asserted by the plaintiff. Doc. 11.  Plaintiff opposes the motion. Doc. 17.  The parties have consented to proceed before the undersigned, and the matter was referred by the district court. Doc. 8.

After considering the evidence submitted and the arguments of the parties, finding the law and evidence to be in favor thereof, we **GRANT** the motion and, by separately issued judgment, dismiss plaintiff's claims with prejudice.

**I.**
**BACKGROUND**

Allen Woodard filed suit against defendants—Eddie Curol, Deputy Hall, and an Unknown Officer in their individual capacities and Sheriff Tony Mancuso in his official capacity—for "violation of Federally protected rights, as well as state law claims under" Louisiana Civil Code articles 2315, 2315.6, and 2320, all in relation to alleged excessive force. Doc. 1, ¶ 1.  These claims stem from plaintiff's arrest by the Calcasieu Parish Sheriff's Department that involved a canine

officer biting him. *Id.*, pp. 5–6.  Defendants filed the instant Motion for Summary Judgment.  Both plaintiff and defendants provided a copy of the body camera footage of the arrest as manual attachments to support their arguments about the appropriateness (or inappropriateness) of summary judgment. Docs. 11, 15.

Plaintiff's complaint states that he was walking through the woods when the officers yelled at him twice. Doc. 1, ¶¶ 5–7.[1]  He claims he then stopped in his tracks and was surrounded by deputies (defendants Curol, Hall, and an Unknown Deputy), one of whom was controlling a canine. *Id.*, ¶¶ 8–10.  According to plaintiff, immediately after the deputies informed him that they were executing a warrant, he "began to beg for the deputies to not shoot him and to not allow the dog to bite him." *Id.*, ¶ 10.  He then claims that, even though he was "completely compliant" with the deputies' orders to get on the ground and to submit to being handcuffed, one deputy gave the command for the dog to attack. *Id.*, ¶¶ 11–12.  Plaintiff claims there were no weapons on his person and that he was never cited for a violent or dangerous crime or a crime that would show he intended to evade the deputies' custody. *Id.*, ¶ 13.

Plaintiff makes claims of excessive force against all deputy defendants.  He claims entitlement to damages under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights. *Id.*, ¶ 19.  He also demands punitive damages and attorney's fees. *Id.*, ¶¶ 19 & 22.  Additionally, plaintiff seeks damages under Louisiana law for pain and suffering, mental anguish, disability, loss of enjoyment of life, loss of consortium, medical expenses, and lost wages. *Id.*, ¶ 21.  Finally, plaintiff asserts that defendant Tony Mancuso is liable in his official capacity for the state law delicts of the deputy defendants under the theory of vicarious liability. *Id.*, ¶¶ 21 & 24.

---

[1] Plaintiff alleges that someone yelled, "I'm going to F*** you up!" and later "Hey B****!" Doc. 1, ¶¶ 5 & 7.

Defendants filed the instant motion for summary judgment. Doc. 11.  They claim there was no excessive force because the deputy defendants acted reasonably, and they assert the affirmative defense of qualified immunity. Doc. 11, att. 1, pp. 7–10.  In support of these claims, defendants provide a different account of how the events surrounding plaintiff's arrest transpired, supported by affidavits and body camera footage of the encounter.  According to defendants, the deputy defendants were actively looking for plaintiff because he was evading arrest on outstanding warrants for theft and forgery. Doc. 11, att. 1, pp. 2–4.  Defendants attach three signed arrest warrants and the accompanying affidavits ordering plaintiff's arrest, all dated January 30, 2020. Doc. 11, att. 6.  Defendants claim, without any confirming evidence, that the Calcasieu Parish Sheriff's Office received a tip as to plaintiff's location, and plaintiff fled on foot to evade arrest. Doc. 11, att. 1, p. 4.  They claim it was for this reason that deputies from the canine unit were called to assist in locating plaintiff. *Id.*  According to the deputy defendants, and confirmed by affidavit, they followed the canine to the wooded area where plaintiff was hiding with his hands obscured. *Id.*; Doc. 11, att. 7.  Plaintiff did not comply with deputy defendants' verbal commands to show his hands and come out, so the canine was ordered to bite. *Id.*  Deputy Bryan Stewart, who was present during plaintiff's arrest, confirmed this version of events by affidavit. Doc. 11, att. 7. Once plaintiff was handcuffed, the canine was ordered to release plaintiff, and it complied with this command. *Id. See also* Doc. 11, att. 2, ¶ 5 *and* Doc. 17, att. 1, ¶ 5 (the parties agree that the canine was instructed to release his bite immediately upon plaintiff's hands being cuffed).

The body camera footage supplied by both plaintiff and defendants supports defendants' version of the facts surrounding the arrest.  The footage does not provide a full depiction of the events described above as the video was only activated once the dog indicated plaintiff was nearby. There are 30 seconds of footage before that indication, but the sound does not begin until the

deputies find plaintiff.[2]  The footage shows deputies searching a wooded area with a canine, finding plaintiff hiding in the wooded area, ordering plaintiff to show his hands (which he failed to do), ordering the canine to bite plaintiff, moving plaintiff from the wooded area and handcuffing him, and immediately removing the canine from its hold on plaintiff's leg. *See* Docs. 11, 15, manual attachments.  This footage also shows plaintiff screaming unintelligibly from the moment he was seen until after the canine disengaged its hold on him. *Id.*

Plaintiff opposes the motion, claiming that there are "many issues of material fact concerning" defendants' liability. Doc. 17.  The issues of fact raised are whether plaintiff was compliant and whether deputy defendants knew plaintiff did not have a weapon. *See id.*  In his opposition, plaintiff acknowledges that he was being seized pursuant to warrants for forgery and felony theft. *Id.*, pp. 8 & 14.  He maintains that he did not pose a risk or threat of harm to defendants or others and that he complied or attempted compliance with the deputy defendants' demands. *Id.*, p. 8.  He provides no support for these assertions.  Plaintiff also claims Deputy Hall chose to use force when unnecessary because plaintiff posed no threat to him. *Id.*, p. 10.  Plaintiff asserts that an expert's deposition testimony, pieces of which were attached as exhibits, confirms that there was no need to order the dog to bite because the deputies were aware plaintiff was not armed at that moment. *Id.*, p. 12 (referencing Doc. 17, att. 19, lines 9–11).[3]  However, earlier in the same deposition (presented as a separate exhibit), the expert made it clear that just because plaintiff did not have a weapon in his hands did not mean there was not a weapon in his proximity that he could use against the officers. Doc. 17, att. 18, p. 1, lines 10–19.  Nevertheless, plaintiff goes on to assert

---

[2] By affidavit, Deputy Stewart explains that the actual footage begins before the dog indicated Woodard's presence because video footage can be preserved for 30 seconds prior to activation, but the sound is not heard at that point because the audio is preserved only from the moment of activation. Doc. 11, att. 7.

[3] Review of the deposition shows this testimony pertained to when the dog should release the bite, not whether there was a need to order the dog to bite.

that the defendant deputies knew that plaintiff did not and was unlikely to have a weapon and that "[n]o reasonable officer should have concluded that Woodard posed an immediate threat to the Defendant-deputies or others." Doc. 17, p. 14.  Plaintiff then relies on his own assertion of defendants' knowledge at the time of the incident and on the body camera footage to support his claim that the deputy defendants were objectively unreasonable for causing the canine to bite him and that defendants are not entitled to qualified immunity. *Id.*, pp. 19–20.  Plaintiff attached the above referenced video to his opposition but does not address the discrepancies between his version of events and the footage.  Plaintiff also claims defendant Mancuso is vicariously liable for the deputy defendants' alleged constitutional violations. *Id.*, pp. 20–22.

In reply [doc. 20], defendants claim plaintiff's depiction of events is false and a fabrication, an assertion they claim is supported by the video evidence. Doc. 20.  Defendants reference the same expert deposition testimony as plaintiff to argue that plaintiff was not compliant, and the force used was not excessive. *Id.*, pp. 5–6 (referring to Doc. 20, att. 1, pp. 86–87).  Defendants also reference the deposition to support their claim that using the canine was reasonable force. *Id.*, pp. 6–7.  In the deposition, the expert testifies that looking for a suspect in a wooded area is dangerous and that officers must treat suspects as if they are armed. Doc. 20, att. 1, pp. 28–29.  The defendants do not address the state law claims.

## II.
### APPLICABLE LAW

#### A.  *Summary Judgment Standard*

A court shall grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material

fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).  A genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  The court must deny the motion for summary judgment if the movant fails to meet this burden. *Tubacex*, 45 F.3d at 954.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted).  "[A] plaintiff cannot establish a genuine issue of material fact by resting on the mere allegations of its pleadings." *Russel v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984).  Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).  "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

The court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).  A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000).  "However, summary judgment is appropriate unless [a] plaintiff can produce *significant evidence* demonstrating the existence of a genuine fact issue." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (citation omitted) (brackets and emphasis in original).  In a non-jury case such as this one, which involves a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).  "When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier

of fact in a plenary trial, could not possibly lead to a different result.'" *Johnson*, 597 F.3d at 676 (quoting *Placid Oil*, 932 F.2d at 398).   A judge may "draw[ ] inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts." *Placid Oil*, 932 F.2d at 398.  "If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should 'draw his inferences without resort to the expense of trial.'" *Id*. (quoting *Nunez v. Superior Oil Co*., 572 F.2d 1119, 1124 (5th Cir. 1978)).

"Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir.2011)).  "A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Id*. (quoting *Carnaby*, 636 F.3d at 187).

### B.  *Claims Covered by 42 U.S.C. § 1983 – Excessive Force*

Federal law provides a cause of action against any person who, under the color of law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.  Although plaintiff has alleged claims for excessive force under the Fourth and Fourteenth Amendments, excessive force claims arising from an arrest invoke the protection provided by the Fourth Amendment of the United States Constitution against "unreasonable seizure" and should be analyzed under that standard. *Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989).  To establish a claim of excessive force under the Fourth Amendment a plaintiff must demonstrate "(1) injury, (2) which resulted directly and only from a use of force that was

clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

Fourth Amendment jurisprudence has long recognized "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 109 S.Ct. at 1871.  In excessive-force claims, the reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1872.  We must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.*  Our inquiry is "whether the officer['s] actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.*  We are to consider only facts that were knowable to the defendant officers. *White v. Pauly*, 137 S.Ct. 548, 550 (2017).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 109 S.Ct. at 1872.  Officers are not required to avail themselves of the least intrusive alternative in responding to and making decisions in an exigent situation; the appropriate inquiry is only whether they acted reasonably. *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994).

### C.  *Claims Covered by 42 U.S.C. § 1983 – Bystander Liability*

Although plaintiff includes defendants Eddie Curol and an Unknown Deputy in his excessive force claims, he actually asserts a claim of "bystander liability," which the Fifth Circuit has recognized may attach to officers "who [were] present at the scene and d[id] not take

reasonable measures to protect a suspect from another officer's use of excessive force." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Bystander liability attaches only where the officer who is present at the scene "'(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)).

### D. *Qualified Immunity*

The doctrine of qualified immunity protects officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Harlow v. Fitzgerald*, 102 S.Ct. 2727, (1982)). It is "an '*immunity from suit* rather than a mere defense to liability.'" *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (emphasis in original) (quoting *Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815 (1985)). Qualified immunity thus remains a high bar, protecting "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 106 S.Ct. 1092, 1093 (1986)).

In the summary judgment context, a government official need only assert the defense of qualified immunity, then the burden shifts to the plaintiff to negate the defense. *Poole*, 691 F.3d at 627 (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). To overcome the defense, the plaintiff must demonstrate that (1) the officers' conduct violated an actual constitutional right, and (2) the officers' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) (quoting *Manis v. Lawson*, 585

F.3d 839, 843 (5th Cir. 2009)).  The court may choose which of the two prongs to address first. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

A plaintiff satisfies the second prong by establishing that "genuine issues of material fact exist regarding the reasonableness of the official's conduct." *King,* 821 F.3d at 654 (quoting *Gates v. Tex. Dep't of Protective & Regul. Servs*., 537 F.3d 404, 419 (5th Cir. 2008)).  As the Fifth Circuit has recently noted:

> In excessive force cases, "[t]he second prong of the [qualified immunity] analysis 'is [itself] better understood as [encompassing] two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (quoting *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002)). . . .
>
> "Whether an official's conduct was objectively reasonable [in light of the law that was clearly established at the time of the disputed action] is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

*Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021) (brackets in original).  "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Where, as here, multiple defendants have been accused of activity that would be protected by qualified immunity, each defendant's actions should be considered on an individual basis, to the extent possible. *Meadours v. Ermel,* 483 F.3d 417, 421–22 (5th Cir. 2007).

## III.
### ANALYSIS

### A.  *The Excessive Force Claims and Qualified Immunity*

On motion for summary judgment, the defendants, as the moving party, have the initial burden of showing that there is no genuine issue of material fact for trial. *Tubacex, Inc.*, 45 F.3d

at 954.  There is a genuine issue of material fact if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  Defendants have shown that there were outstanding warrants out for plaintiff's arrest for felony forgery and theft on the day of the arrest. Doc. 11, att. 6.  Through both an affidavit from Deputy Stewart (who was present during the arrest) and the body camera footage of the altercation, defendants have established that plaintiff's hands were hidden in the wooded area and that he was not compliant with the deputy defendants' commands. Doc. 11, att. 7; Doc. 11, manual attachment.  With support from an expert's deposition testimony, defendants have also established that they could not be certain whether plaintiff had a weapon near him when the dog was engaged.[4]  Defendants have shown that the dog disengaged from plaintiff's leg once plaintiff was handcuffed, which was confirmed by Deputy Stewart's affidavit and the body camera footage. Doc. 11, att. 7; Doc. 11, manual attachment.[5]  Accordingly, we find that defendants have carried their burden of showing that there is no genuine issue of material fact as to the excessive force claims as the evidence establishes that the use of canine force in plaintiff's arrest was not excessive under the circumstances.

The burden then shifts to plaintiff, the non-moving party, to set forth specific facts showing that there is a genuine issue for trial.  To make such a showing, plaintiff must submit "significant probative evidence" in support of his claim and cannot rely on the mere allegations of his pleadings. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990); *Russel v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984).  In support of his claims, plaintiff has supplied the same video evidence as defendants, a warrant for plaintiff's arrest, and parts of answers to

---

[4] *See* Doc. 20, att. 1, p. 59, lines 10–19 (stating that plaintiff could have had a weapon).  *See also* Doc. 20, att. 1, pp. 28–29 (stating that law enforcement must treat suspects on the run as if they are armed).

[5] Additionally, the parties agree that the canine was instructed to release his bite immediately upon plaintiff's hands being cuffed and that the canine complied. *See* Doc. 11, att. 2, ¶ 5 *and* Doc. 17, att. 1, ¶ 5.

interrogatories and the expert deposition transcript. *See* Doc. 17, attachments.  However, this evidence does not support plaintiff's contention that there are any genuine issues of material fact. The video evidence contradicts plaintiff's version of events.  Furthermore, the piecemeal presentation of excerpts of deposition testimony weakens plaintiff's position.  Though plaintiff has made contentions that support his point and referred to the provided portions of the deposition for support, those contentions are argument, not evidence.  The deposition testimony provided is summary judgment-type evidence, but the contents of this evidence do not support the contentions plaintiff has claimed they do.  Additionally, the warrant and answers to interrogatories do not set forth any material facts that show a genuine issue for trial.  Thus, plaintiff has not presented "significant probative evidence" but has instead rested on mere allegations to support his claims of excessive force.  Accordingly, plaintiff has failed to meet his general summary judgment burden with respect to his excessive force claims.

Even if we had determined that the force was excessive, we would still find these officers entitled to the qualified immunity defense and thus immune from suit.  When considering the qualified immunity defense our focus "is not on the merits of [Woodard's] claims, but on the [defendants'] entitlement to qualified immunity." *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012).  Plaintiff, who bears the burden to negate the qualified immunity defense properly raised by defendants, has not done so.  Viewing the evidence in the light most favorable to plaintiff, including the video evidence, plaintiff has failed to establish that the officers' actions were excessive or objectively unreasonable.  Even after drawing all justifiable inferences against summary judgment, we find that plaintiff has offered only "mere allegations," rather than "*significant evidence* demonstrating the existence of a genuine fact issue."

Utilizing the *Graham* factors, defendant Hall's decision to allow the canine to initially apprehend plaintiff was reasonable under the circumstances and the force was not excessive.  First, plaintiff was suspected of felony theft and forgery.  The Fifth Circuit has held that a misdemeanor DUI is a serious offense.  *See Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (holding that misdemeanor DUI is a serious offense).  If misdemeanor DUI is a serious offence, then *a fortiori* so is felony theft.  *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018) (reasoning that if DUI is a serious offense, then *a fortiori* so too is felony assault).  Second, plaintiff posed an "immediate threat to the safety of the officers."  Plaintiff was hidden in an area that presented dangerous circumstances due to low visibility.[6]  Additionally, because the officers came upon plaintiff's person instantly, this is a situation where our determination of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 109 S.Ct. at 1872.  Finally, defendants have presented evidence that plaintiff was ordered by the officers to come out and according to the video, he clearly did not do so and chose to remain in the wooded area.[7]  Plaintiff has presented no evidence to counter the testimony that he failed to come out of the wooded area when ordered.  Additionally, the video evidence clearly shows that plaintiff was lying in the tall grass when he was detected by the officers and canine and at no time "was being completely compliant with the deputies' request to submit" by revealing himself.

---

[6] Expert deposition testimony, parts of which are relied on by both sides, stated that the situation surrounding the arrest was dangerous. Doc. 20, att. 1, pp. 28.

[7] Deputy Bryan Stewart's affidavit and the video attachment are both evidence showing that defendants ordered plaintiff to reveal himself, but he failed to comply and continued lying in the wooded area. Doc. 11, att. 7; Docs. 11, 17, manual attachments.

Woodard, by hiding from the officers in tall, thick grass where his hands and surroundings could not clearly be seen and by failing to comply with orders, "actively resist[ed]" the officers' instructions and posed an "immediate threat to the safety of the officers." *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).  This conclusion is particularly supported by the short amount of time between the canine signaling Woodard's whereabouts and the officers immediately coming upon his person.  "'[T]he use of a trained dog to apprehend fleeing or hiding felons is not inherently excessive force,' even though 'some injury to the suspect is likely to occur.'" *Brown v. Police Dept of Shreveport*, No. 19-cv-00386, 2020 WL 4742838, at *3 (W.D. La. Mar. 16, 2020) (quoting *Samrco v. Neumann*, 44 F.Supp. 2d 1276, 1292 (S.D. Fla. 1999)).  Accordingly, when confronted by a suspect who was otherwise unwilling to submit to arrest and who was not visible, a reasonable officer could not have known whether Woodard had weapons[8] and it was reasonable for the officers to deploy a dog to subdue a hiding suspect who may be armed.

For the same reason, it was also reasonable under the circumstances to allow the canine to *continue* subduing Woodard until he was handcuffed.  In the video, there is a period where Woodard's hands become visible.  Plaintiff points to this moment as evidence that it was excessive to allow the dog to remain in a bite because he had complied and "Defendant-deputies knew that Woodard was unarmed." Doc. 17, p. 19.  While the Fifth Circuit has "consistently held that a suspect does not pose an immediate threat where he unambiguously surrenders by, for example, placing his hands in the air and complying with the officers' commands," *Escobar*, 895 F.3d at 394, that was not the case here.  In *Cooper v. Brown*, another excessive force case involving a police canine, the court held that officers did use excessive force by permitting a dog to continue biting a suspect when they had no reason to think he had a weapon, his hands were visible, and he

---

[8] *See* Doc. 17, att. 18, p. 1, lines 10–19 (stating that plaintiff could have had a weapon). *See also* Doc. 20, att. 1, pp. 28–29 (stating that law enforcement has to treat suspects on the run as if they are armed).

complied with officers' commands, but the court expressly prefaced its finding by stating "we do not say that *any* application of force to a compliant arrestee is *per se* unreasonable.". 844 F.3d 517, 524 (5th Cir. 2016) (emphasis in original).  And again, evidence in this case does not establish that plaintiff was similarly visible and compliant.  An Eleventh Circuit case with very similar facts, *Crenshaw v. Lister*, 556 F.3d 1283, 1292–93 (11th Cir. 2009), illustrates why compliance cannot be viewed in isolation.  In a recent decision involving a police dog excessive force claim, the Fifth Circuit relied heavily on *Crenshaw* in finding that the officer's actions were not unreasonable:

> [In *Crenshaw*], an officer responded to reports of possibly two armed robberies; after a chase, the suspect abandoned his vehicle and fled into the woods. The suspect then yelled his location and intent to surrender, but the officer released a canine without warning. And despite screams of pain, the officer did not remove the canine until the suspect was handcuffed. Yet the court held that the officer's use of force was not excessive. *Id*. at 1292. The officer had reason to believe that the suspect of an armed robbery was armed and, given the nature of the flight and location in the woods, "it was objectively reasonable for [the officer] to question the sincerity" of the surrender. *Id*. at 1293. Moreover, although the suspect was not actively resisting while being handcuffed, the officer was not required to call off the dog until the suspect was secured because he "had no reason to trust that [the suspect] would not suddenly attempt to do him harm." *Id*.

*Escobar*, 895 F.3d at 395 (citing *Crenshaw*, 556 F.3d at 1292–93).

Woodard was given opportunities and orders to reveal himself, but instead chose to remain hidden in the wooded area.  We have already found that the initial use of the canine was reasonable as plaintiff's hands were not visible at the time.  Although his hands were briefly visible at some point during the struggle, the heavily grassy area around him was not.  A reasonable officer would have had no way of knowing whether a weapon was concealed in plaintiff's immediate grasp or if plaintiff could ambush the officers.[9]  It was reasonable for defendant Hall to believe that Woodard may try to harm the officers if the dog was called off before he was fully secured.  Although "the

---

[9] *See* Doc. 17, att. 18, p. 1 (expert testifying that seeing plaintiff's hands did not remove the possibility that there was a weapon within plaintiff's reach).

law is now clearly established that when no reasonable officer could conclude that a suspect poses an immediate threat to law enforcement or others, it is unreasonable to use K9 force to subdue a suspect who is complying with officer instructions," *Shumpert v. City of Tupelo*, 905 F.3d 310, 322 (5th Cir. 2018) (internal quotation marks and brackets omitted), that is not the case here.  A reasonable officer, confronted with a suspect who had concealed himself from view could conclude that the suspect, even after showing his hands, could still be an immediate threat to officers if the canine was released before handcuffing. *See Escobar*, 895 F.3d at 395–96.

This situation was "tense, uncertain, and rapidly evolving," and defendant Hall's decision to use force to apprehend and detain Woodard was objectively reasonable. *Graham*, 109 S.Ct. at 1872.  Accordingly, defendant Hall's conduct does not amount to excessive force.  This is the exact type of case that qualified immunity is meant to protect as there is no indication that only someone who is "plainly incompetent" or who "knowingly violate[s] the law" would have allowed the canine to subdue Woodard. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).

On the facts before us, plaintiff cannot show that defendant Hall violated his Fourth Amendment rights.  But even if he could, defendant Hall would still be entitled to qualified immunity because plaintiff cannot show a violation of clearly established law.  "'[T]o show a violation of clearly established law, [Woodard] must identify a case that put [Hall] on notice that his specific conduct was unlawful.'" *Salazar v. Molina*, 37 F.4th 278, 285 (5th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 8 (2021)).  As the Fifth Circuit characterized it, "the law must be so clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately." *Id*. (quoting *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)).  Additionally, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 286 (emphasis

omitted).  Such precedent must make "it clear to every reasonable officer that he could not [deploy a canine] in the specific circumstances [Hall] confronted." *Id.* at 287 (citing *Morrow*, 917 F.3d at 876).

Plaintiff provides no such precedent that clearly establishes the violative nature of defendant Hall's deployment of his canine.  While it may be clearly established that "when no reasonable officer could conclude that a suspect poses an immediate threat to law enforcement or others, it is unreasonable to use K9 force to subdue a suspect who is complying with officer instructions," *Shumper supra*, it is evident here that plaintiff was not complying.  The cases cited by plaintiff offer materially different factual circumstances than those present in this case. *See Salazar*.  Plaintiff offers no cases "where officers used a similar level of force in similarly threatening circumstances." *Id*.  Accordingly, plaintiff has failed to show that the law allegedly violated was so clearly established; thus, defendant Hall is entitled to qualified immunity.

For the same reasons, neither Curol's nor the Unknown Deputy's conduct was violative of any constitutional right, and both are entitled to qualified immunity.  Under the theory of bystander liability, these defendants can only be held liable if they failed to take reasonable measures to protect the plaintiff from another officer's use of excessive force.  Having found no constitutional violation on the part of Deputy Hall, Curol and the Unknown Deputy cannot be held liable as bystanders as there was no reason for them to intervene in a situation where the force being used was reasonable. *See Brown v. Police Dept of Shreveport*, No. 19-cv-00386, 2020 WL 4742838, at *3 (W.D. La. Mar. 16, 2020).

### B.  *Louisiana State Law Claims*

Plaintiff's complaint also alleges defendants are liable for damages under Louisiana Civil Code articles 2315, 2315.6, and 2320.  In their motion for summary judgment, defendants request

dismissal of all claims but fail to address the articles 2315 and 2315.6 claims entirely and put forth only a brief and largely misplaced argument addressing the article 2320 claim. *See* doc. 11, att. 1, p. 11.  Defendants dedicate most of their argument to qualified immunity, which is not applicable to Louisiana tort claims. *Glaster v. City of Mansfield*, No. 14-627, 2015 WL 852412, at *10 (W.D. La. Feb. 26, 2015).   Accordingly, under the traditional summary judgment standard, it is defendants' burden to demonstrate that there is no genuine dispute as to any material facts regarding these claims and because defendants either have failed to address or incorrectly addressed plaintiff's state law claims, they have failed to meet their burden.   Thus, summary judgment would be inappropriate.

However, plaintiff sought jurisdiction in this court pursuant to federal question jurisdiction, 28 U.S.C. § 1331.  Since we have found it proper to award summary judgment on plaintiff's §1983 claims, after dismissal of such, no federal question remains before this court.   "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999).   Accordingly, plaintiff's state law claims should be dismissed without prejudice. *See id.*

### IV.
#### CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment seeking dismissal of the claims made against them by plaintiff is hereby **GRANTED**.   By separately issued judgment, we dismiss plaintiff's claims under 42 U.S.C. § 1983 against defendants with prejudice at plaintiff's cost and dismiss plaintiff's state law claims without prejudice.

THUS DONE AND SIGNED in Chambers this 26th day of September, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE